IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSEPHINE ROSE, } | |
| } | |
|     *Plaintiff*, } | |
| v. } | Civil Action No. H-07-366 |
| } | |
| ERIC KEN SHINSEKI, SECRETARY OF } | |
| VETERANS AFFAIRS, } | |
| } | |
|     *Defendant*. } | |

### OPINION AND ORDER

Presently before the Court in this employment discrimination suit is Defendant's motion for summary judgment (Doc. 14). Upon review and consideration of this motion, the response and reply thereto, the entire record in this cause, and the relevant legal authority, the Court finds that Defendant's motion should be granted.

I.    Background and Relevant Facts

Plaintiff Josephine Rose (Rose) filed suit against Defendant R. James Nicholson, Secretary of Veterans Affairs, (Nicholson)[1] alleging race and age discrimination in violation of Title VII of the Civil Rights Act of 1991, *as amended*, 42 U.S.C. § 2000e *et seq.*, (Title VII) and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, (ADEA), respectively. (Pl.'s Compl., Doc. 1). Specifically, Plaintiff alleges that Defendant discriminated against her on the basis of her race and age when it did not select her for a promotion to the Food Service Worker Supervisor WS-7408-4 position at the Michael E. DeBakey Veterans Affairs Medical Center (VAMC) under Vacancy Announcement VN 66-04. (*Id.* at ¶ 1).

---

[1] Nicholson is no longer Secretary of the Department of Veterans Affairs. Eric Ken Shinseki (Shinseki) is the current Secretary of the Department of Veterans Affairs. Shinseki's substitution as a defendant in this matter is automatic pursuant to Fed. R. Civ. P. 25(d)(1).

The Vacancy Announcement includes the job duties, qualification requirements, and evaluation method for the Food Service Worker Supervisor position. With respect to job duties, it states, in pertinent part:

> Responsibilities include, but are not limited to: supervision of the activities of a tray assembly line, advanced delivery system, one dish room; food service to approximately 500 patients on regular and modified diets, Officers of the Day and approved sharing partners (revenue generation); routinely supervises up to 45 food service employees, WG-1 through WG-4; relieves for higher graded supervisor and assumes full range of responsibility for the position as assigned; must be able to communicate clearly with supervisors and subordinates; must have a thorough knowledge of diet therapy and the food service system; must be able to evaluate a situation and make rapid, accurate decisions. Responsible for writing procedures, work assignments, position descriptions, and performance plans for review by supervisor.

(Doc. 14 Ex. 5 at 1). The announcement advises applicants that they will be evaluated using the job element method as it is described in OPM Handbook X-118C for Trades and Labor Occupations. (*Id.*). With respect to the evaluation method, the announcement goes on to state,

> . . . basically qualified applicants may be further evaluated by a promotion panel to identify those who are best qualified. Evaluations will be made of experience, training and self development, awards and outside activities. This determination will be based on a review of the following knowledge skills, and abilities . . . [a]bility to lead or supervise . . . [w]ork practices (cleanliness, neatness, and sanitation in food service work) . . . [t]echnical practices in food service work, i.e., knowledge of regular and modified diets and knowledge of food handling techniques . . . [a]bility to read, understand, and follow preparation and serving instructions, manuals . . . [a]bility to use and maintain food service utensils and equipment.

(*Id.* at 1-2).

Stephanie Mazzoni (Mazzoni), a Human Resources Specialist in the Recruitment and Placement Section at the VAMC, outlines the hiring process in her declaration. (Mazzoni Decl., Doc. 14 Ex. 9). The VAMC's Merit Promotion Plan and the VA Handbook govern hiring

at the VAMC.  (*Id.* at ¶ 3).  After the candidates submit their applications, the Human Resources Department empanels a federal wage system rating and ranking panel (the Panel) to review the application packages, including the official personnel file, of all eligible candidates.  (*Id.* at ¶ 6). To be a member of the Panel, with the exception of a single member from the Human Resources Department, one must be a "subject matter expert," which is defined as follows:

> [p]erson with direct knowledge of what is done in the job, what knowledge, skills, abilities and other characteristics (KSAOs) are required, and the general background of persons who are able to do the job successfully.  These may include those currently doing the job, recent incumbents, those who supervise others doing the job, and other acknowledged job experts[.]

(*Id.*).  Once the Panel convenes, they take a series of steps as outlined below.

First, the Panel screens out candidates who are not minimally qualified for the position.  (*Id.* at ¶ 7).  To be minimally qualified, the candidate must receive a score of at least two points on the screen-out element of the job elements listed in the Vacancy Announcement and a total score of at least two times the number of job elements identified in the Vacancy Announcement.  (*Id.*).  After screening out unqualified candidates, the Panel looks at the scores of all minimally qualified applicants to determine which ones are the "best qualified."  (*Id.* at ¶ 8).  "Best qualified" candidates are those who are "competing under merit promotion procedures whose relative rankings indicate that they will perform the job to be filled with substantially equal success."  (*Id.*).  The "best qualified" candidates are then placed on a list called a Certificate of Eligibles.  (*Id.* at ¶ 9).  The Human Resources Department sends the Certificate of Eligibles, along with all of the written materials about the candidates, to the appropriate line executive for a final selection.  (*Id.*).  The line executive may delegate selection authority to a lower-level supervisor.  (*Id.* at ¶ 10).  The selecting official has broad discretion in making the selection from any candidate on the "best qualified" list, but this decision must be based on merit

and not discrimination.² (*Id.* at ¶ 11). When the selecting official makes the final decision, the clinical support service line notifies the Human Resources Department which then makes a formal job offer and processes the selection. (*Id.* at ¶ 13).

At the time the events giving rise to this cause of action transpired, Rose was fifty-three years old and worked as a GS-5 program support clerk on the clinical support service line at the VAMC. (Doc. 14 Exs. 1, 2). Rose, the selectee, Ken Smith, and others applied for a promotion to the Food Service Worker Supervisor position by submitting VA Forms 5-4078m, 4676a, and 4667b. (*Id.* at ¶ 14). The Panel for the vacancy at issue here consisted of Ernestine Holland (Holland), Kenneth Blakes (Blakes), and Mazzoni. (*Id.* at ¶ 15). Holland and Blakes were food service supervisors, and Mazzoni served as a technical advisor and did not have a vote. (*Id.*).

The Panel reviewed the application packages, which included the applicants' official personnel folders. (*Id.*). The Panel found that both Rose and Smith were minimally qualified for the vacancy. (*Id.* at ¶ 16). In assessing whether Rose and Smith were among the "best qualified" candidates, the Panel used a scoring matrix based on the selection criteria listed in the Vacancy Announcement.³ (*Id.* at ¶ 17). The Panel gave Rose a score of 17 and Smith a score of 19. (*Id.* at ¶ 18). As such, they were placed on the list of "best qualified" candidates.

---

² Interviews are optional. (*Id.*). However, in selections involving only internal candidates, such as the one at issue in this case, it is frequently the case that the selecting official supervises the applicants. (*Id.* at ¶ 12). As such, it is not unusual for the selecting official to forego interviews. (*Id.*). Sometimes, the clinical support service line organizes an interview panel to make recommendations to the selecting official. (*Id.*). This is not mandatory, though. (*Id.*). The selecting official may accept or reject any recommendations, and sometimes a selecting official who supervises the candidates will pick a candidate other than the one who has the best interview. (*Id.*). Only the selecting official has the authority to make a final selection. (*Id.*).

³ As it states in the Vacancy Announcement, this determination is based on a review of the following: ability to lead or supervise; work practices (cleanliness, neatness, and sanitation in food service work); technical practices in food service work, i.e., knowledge of regular and modified diets and knowledge of food handling techniques; ability to read, understand, and follow preparation and serving instructions, manuals, etc.; and ability to use and maintain food service utensils and equipment. (Doc. 14 Ex. 5). This vacancy was not tied to a seniority system, and so, no points were awarded based on seniority. (Mazzoni Decl., Doc. 14 Ex. 9 at ¶ 17).

- 4 -

(*Id.*). On July 17, 2004, the Panel forwarded the "best qualified" candidate list and the written materials relating to these candidates to the clinical support service line through its executive for a final selection. (*Id.* at ¶ 19).

Stephen Gallardo (Gallardo), at all times relevant to this case, was the Chief of Food Production, Food and Nutrition Service at the VAMC. (Gallardo Decl., Doc. 14 Ex. 8 at ¶ 1). As such, he was the selecting official for the position at issue. When his department received the list of the "best qualified" candidates, it decided to hold interviews. (*Id.* at ¶ 7). The interview panel consisted of the following individuals: Darcie K. Asakura, Administrative Dietician (Asakura); Harold Blunscon, Food Service Supervisor (Blunscon); and Joan Bailey, Supply Processing Clerk (Bailey). (*Id.*). The interview panel gave Rose a score of 4.5 and Smith a score of 4.2 and recommended another interview with each of them. (*Id.*).

Gallardo knew Rose and Smith because he had supervised both of them. (*Id.* at ¶ 8). He was Rose's direct, first-line supervisor for approximately five months before he made the final selection for the vacancy, and he was Smith's second-level supervisor during the same time period. (*Id.*). As such, he saw them both every day. (*Id.*). Gallardo reviewed the written materials for the five individuals who were on the "best qualified" list and agreed that Rose and Smith were the top two candidates. (*Id.* at ¶¶ 9-10). Gallardo then focused his attention on the written notes from the interview panel and the other application materials pertaining to Rose and Smith. (*Id.* at ¶ 11). Specifically, he looked at what each candidate had done, could do, and wanted to do for the food and nutrition service and the veterans. (*Id.* at ¶ 12). Gallardo concluded that Rose did not do as good a job as Smith at expressing what it was she would bring to the food and nutrition service if promoted to supervisor. (*Id.* at ¶ 13). Specifically, Gallardo found that Smith's answers reflected an appreciation for the needs of the veterans at the hospital

being paramount, that Smith did a better job of articulating his experience and abilities and making the case for having the ability to lead and supervise, and that Smith's statements about the safe handling of food, Hazard Analysis Critical Control Point (HACCP) guidelines, and specific temperatures at which cold and hot foods must be held were particularly impressive. (*Id.* at ¶¶ 14-15).

As their supervisor, Gallardo had a high opinion of both Rose and Smith. (*Id.* at ¶ 17). He witnessed Smith handle diverse tasks in the kitchen and take the initiative to do whatever needed to be done. (*Id.*). Additionally, Smith assisted on the patient floors when needed, for example, by handling issues in the nourishment rooms. (*Id.*). These tasks are all directly relevant to the responsibilities the promotion selectee would have. (*Id.*). Rose's position was mostly administrative, but Gallardo admits that she performed well and was productive. (*Id.*). Because these two individuals performed different tasks on a day-to-day basis, Gallardo found it somewhat difficult to compare them. (*Id.*). He did, however, supervise a catering project with which both individuals were assisting. (*Id.*). On this occasion, Rose had a disagreement with another employee about how the employee was handling part of the project, whereas Smith worked smoothly with his fellow employees. (*Id.*). Gallardo acknowledges that Rose was acting supervisor for approximately two months but ultimately found that this limited experience did not outweigh the reasons he thought Smith was better qualified for the promotion. (*Id.* at ¶ 18).

After reviewing the written application materials and interview notes concerning Rose and Smith and in light of the fact that he had supervised them both for approximately five months, Gallardo decided that he did not need to interview them in order to make his decision. (*Id.* at ¶ 19). Gallardo selected Smith for the promotion. (*Id.*). Phyllis Smith, CSSL Executive,

through Donna Kyle, and Gallardo's immediate supervisor, Kae Fenster, agreed with Gallardo's decision. (*Id.* at ¶ 20). As such, on August 17, 2004, the Chief of Recruitment and Placement, Human Resources, was advised of Gallardo's selection.

II.     Legal Standards

    A.     Summary Judgment

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a

jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v.*

*Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

    B.  <u>Race Discrimination Claim under Title VII</u>

    It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

    Plaintiff has alleged a race discrimination claim based on circumstantial evidence.  It is, therefore, subject to the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).  Under this framework, the initial burden lies with the plaintiff to plead a *prima facie* case of discrimination.  *Davis*, 383 F.3d at 316.  To establish a *prima facie* case of race discrimination, the plaintiff must show the following: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were more favorably treated.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (citing *Shackelford v. Deloitte &*

*Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999); *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).

If the plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action. *See Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 802). The defendant's burden is satisfied if it produces evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original).

If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's prima facie case drops out." *Id.* (citing *Hicks*, 509 U.S. at 510-511). The plaintiff must then introduce evidence creating a jury question as to whether the defendant was motivated by discriminatory animus. The plaintiff meets this burden by showing either that (1) defendant's articulated reason was pretextual (pretext alternative), or (2) plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citing *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

Although the intermediate evidentiary burdens shift back and forth, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). In determining whether summary judgment is appropriate, the court considers the strength of the

plaintiff's *prima facie* case, the probative value of proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may properly be considered for summary judgment.  *Id.* at 148-49.

### C. Age Discrimination Claim under ADEA

The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, (the "ADEA") provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

"In essence, the ADEA makes it unlawful for an employee, who is at least forty years old, to be discharged or otherwise subjected to an adverse employment action because of his or her age." *Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 665 (S.D. Tex. 2001) (citing *Rutland v. Moore*, 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a), 631(a))).  "Congress expressly declared that the purposes of the ADEA were 'to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment.'"  *Id.* at 665 (quoting *Wamsley v. Champlin Ref. & Chems., Inc.*, 11 F.3d 534, 541 (5th Cir. 1993), *cert. denied*, 514 U.S. 1037 (1995) (quoting 29 U.S.C. § 621(b))).  "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and

had a determinative influence on the outcome.'" *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co.*, 507 U.S. at 610).

When a plaintiff produces only circumstantial evidence of age discrimination, the burden-shifting analysis set forth in *McDonnell Douglas* guides the Court's inquiry. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 894 (5th Cir. 2002). The Fifth Circuit applies the *McDonnell Douglas* framework to both Title VII and ADEA claims. *Id.* at 896 n. 2 (citing *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 n. 3 (5th Cir. 2000)).

III.	Combined Analysis of Plaintiff's Race and Age Discrimination Claims

As Defendant concedes, Plaintiff has established a *prima facie* case of race and age discrimination under the *McDonnell Douglas* rubric. She is a member of a protected class under Title VII (race) and the ADEA (age), was qualified for the position, was rejected for the position, and a younger male received the promotion. Thus, the Court now looks to Defendant for a legitimate, non-discriminatory reason for its decision not to promote Rose.

Defendant has offered non-discriminatory reasons for promoting Smith instead of Rose. As Gallardo states in his declaration, Smith was the better qualified candidate because his answers reflected an appreciation for the needs of the veterans at the hospital being paramount, he did a better job of articulating his experience and abilities and making the case for having the ability to lead and supervise, and his statements about the safe handling of food, Hazard Analysis Critical Control Point (HACCP) guidelines, and specific temperatures at which cold and hot foods must be held were particularly impressive. Additionally, when Gallardo supervised a catering project with which both Rose and Smith were assisting, Rose had a disagreement with another employee about how the employee was handling part of the project, whereas Smith worked smoothly with his fellow employees. "Selecting the better of two qualified applicants is

a legitimate non-discriminatory explanation for a promotion decision." *Sinclair v. Potter*, No. Civ. A. H-04-4090, 2006 WL 763629, at * 7 (S.D. Tex. Mar. 23, 2006) (citing *Price*, 283 F.3d at 721 n. 2; *Jefferies v. Harris County Cmty. Action Ass'n.*, 693 F.2d 589, 590 (5th Cir. 1982)).

Because Defendant has articulated a legitimate, non-discriminatory explanation for its decision, Rose must establish that Defendant's explanation is untrue or is a pretext for discrimination. In an attempt to establish pretext, Rose contends that Defendant had not hired a female supervisor since 1984 and that she was not informed of her non-selection for the position until October 22, 2004. The first argument is unsubstantiated and the second one is irrelevant for the Court's purposes here. As such, the Court finds that Plaintiff has failed to carry her burden and show pretext.

As the Fifth Circuit has held, a plaintiff may survive summary judgment by submitting evidence that she was "clearly better qualified" than the employee selected for the promotion at issue. *Runnels v. Texas Children's Hosp. Select Plan*, 167 Fed. Appx. 377, 383 (5th Cir. 2006) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356-57 (5th Cir. 2001)). "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine*, 266 F.3d at 357 (quoting *Deines v. Texas Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

In an attempt to demonstrate that she was "clearly better qualified" than Smith, Rose points to the fact that she served as acting supervisor in the food and nutrition service for a short time in 2000, that Smith had been on sick leave certification when he made his application,

and that Rose's coworker subjectively believed that Rose was the better candidate. Rose's first two contentions are not supported by the evidence in the record. With respect to the third argument, although this may, in fact, be true, a coworker's subjective beliefs are not sufficient to defeat summary judgment here. In view of all of the evidence presented and set forth in Part I of this Opinion and Order, the Court finds that Rose has failed to show that she was "clearly better qualified" than Smith for the promotion.

IV. Conclusion

Accordingly, for the reasons set forth herein, the Court hereby ORDERS that Defendant's motion for summary judgment is GRANTED.

SIGNED at Houston, Texas, this 29th day of September, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE